# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

    v.                               CR 05-2366 JEC

JULIO GUERRERO-CASTRO,

        Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant-Movant Julio Guerrero-Castro's ***Petition for Writ of Error Coram Nobis (Doc. 33)***, filed March 31, 2011.  Plaintiff-Respondent ("the Government") filed its response to the petition and an addendum to its response on April 29, 2011. [*Docs. 37* and *38*].  Mr. Guerrero-Castro filed his reply on June 1, 2011.  [*Doc. 40*].  Senior United States District Judge John E. Conway referred the claims raised in the petition to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 39*].  Having considered the parties' submissions, relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that the petition be **DENIED**.

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

## *Background*

On July 6, 2006, Mr. Guerrero-Castro was convicted in this case pursuant to a guilty plea of the crime of  Possession with Intent to Distribute Over 100 Kilograms of Marijuana.  [*Doc. 29* at 1].  Mr. Guerrero-Castro was sentenced to a term of imprisonment of sixty months and a term of supervised release of four years.  *Id.* at 2-3.  The Government states that, after Mr. Guerrero-Castro's sentencing, he was sent to the Reeves County Detention Center, which was a prison for criminal aliens.  [*Doc. 37* at 2-3].  Mr. Guerrero-Castro was released from the Bureau of Prisons' custody on February 5, 2010.  *See* [*Doc. 37-7*].  Mr. Guerrero-Castro states that on February 10, 2010, he was arrested by the Department of Homeland Security, Immigration Customs Enforcement Division and deportation proceedings against him were commenced.  *See* [*Doc. 33* at 3 and *Doc. 33-1* at 2-3].  Mr. Guerrero-Castro states that he is a lawful permanent resident of the United States.  [*Doc. 33* at 1].  On November 8, 2010, Mr. Guerrero-Castro filed a document in this case titled ***Julio Guerrero-Castro Petition for Relief From Judgment Pursuant to N.M. Dist. Ct. P.C.P. 1-060 B(6) (Doc. 30)***, in which he raised three ineffective assistance of counsel claims and asked the Court to set aside his conviction.  On April 4, 2011, the Court entered an order finding that Mr. Castro's claims were a collateral attack on his sentence, which could only be pursued under 28 U.S.C. § 2255, and, declining to recharacterize Document 30 as a Section 2255 motion because it was untimely under that statute, the Court dismissed the claims under Fed. R. Civ. P. 60(b).  [*Doc. 34* at 2].

## *Mr. Guerrero-Castro's Claim*

On March 31, 2011, Mr. Guerrero-Castro filed his ***Petition for Writ of Error Coram Nobis (Doc. 33)***, in which he asks for relief under the All Writs Act, 28 U.S.C. § 1651, specifically the writ of error *coram nobis*.  [*Doc. 33* at 1].  Mr. Guerrero-Castro states that his rights under the United

States Constitution were violated because his counsel failed to properly advise him of the immigration consequences of his guilty plea in violation of the United States Supreme Court's March 31, 2010 decision in *Padilla v. Commonwealth of Kentucky*, 130 S. Ct. 1473, 1483 (2010). [*Doc. 33* at 2-7].   Mr. Guerrero-Castro contends that his counsel: (1) failed to investigate the immigration consequences of Mr. Guerrero-Castro's guilty plea; (2) "failed to seek an immigration[-]safe disposition of" his case; and (3) failed to advise Mr. Guerrero-Castro of the legal consequences he would face if he was convicted of a drug offense.   [*Doc. 33* at 2]. Mr. Guerrero-Castro states that his "election to plead guilty was based on inadequate advice regarding immigration consequences from his" counsel, and that if he had "been properly advised by his attorney of the drastic immigration consequences that a guilty plea would entail, the decision to reject the plea bargain would have been rational under the circumstances."   [*Doc. 33* at 7] (citations omitted).   Mr. Guerrero-Castro asks the Court to "allow him to withdraw his guilty plea and to vacate the judgment entered herein."   *Id.*

In its response, the Government states that Mr. Guerrero-Castro's petition is untimely because he should have been aware that he faced deportation at the time of his sentencing, or at least as early as 2006 when he arrived at the Reeves County Detention Center.   [*Doc. 37* at 5].   The Government further contends that Mr. Guerrero-Castro has failed to establish that his counsel's performance fell below an objectively reasonable standard or that Mr. Guerrero-Castro was prejudiced by his counsel's allegedly deficient performance because Mr. Guerrero-Castro "knew that the government had information that he was a Resident Alien, as evidenced by his [presentence report] and that he was sent to a prison facility for criminal aliens."   *Id.* at 8.   The Government contends that the *Padilla* decision does not support Mr. Guerrero-Castro's claim because that decision did not consider an untimely claim, and because the counsel in that case gave his client

incorrect advice, whereas Mr. Guerrero-Castro claims his counsel failed to give him any advice regarding the immigration consequences of his plea. *Id.* at 7. In its addendum to its response, the Government submits a copy of the transcript of a preliminary hearing on October 4, 2005 in Mr. Guerrero-Castro's case, at which the Government stated that Mr. Guerrero-Castro would be "looking at five to 40 [years], but it would be an aggravated felony and he would be deported should he be convicted and . . . he admitted to his crime." [*Doc. 38-1* at 15].

In his reply, Mr. Guerrero-Castro states that he could not have made a prior attack on his conviction because the *Padilla* decision only recently became controlling precedent. [*Doc. 40* at 2]. Mr. Guerrero-Castro contends in his reply that *Padilla* should apply retroactively. *Id.* at 2-7. Mr. Guerrero-Castro further states that his counsel should have sought an "immigration[-]safe disposition" if he did not know that the conviction would make Mr. Guerrero-Castro mandatorily deportable (*id.* at 7), and that, if Mr. Guerrero-Castro had known that he would be deported based on his conviction, "would have asked his lawyer to file a motion to suppress his oral statements, suppress the evidence or seek an immigration[-]safe plea" (*id.* at 8).

### *Discussion*

### *A.  Jurisdiction*

At the outset, the Court must consider whether it has jurisdiction over this claim or whether it should be considered a second or successive Section 2255 motion, which, if it is, the Court must either dismiss for lack of jurisdiction or transfer to the Tenth Circuit. *See United States v. Chacon*, No. 10-2095, 2010 WL 4846106, at *1-2 (10th Cir. Nov. 30, 2010) (unpublished) (remanding case to district court with instructions to vacate its order dismissing petitioner's motion for writ of *audita querela* because petitioner had already filed a Section 2255 motion and did not have authorization to file a second one), and *United States v. Nguyen*, No. 10-3164, 398 Fed. Appx. 336, 338-39,

2010 WL 3965897 (10th Cir. Oct. 12, 2010) (unpublished) (explaining that the common-law writs are not available when other remedies exist, such as a motion to vacate under Section 2255, and vacating the district court's judgment on the audita querela petition because the petitioner could have brought his claims in a Section 2255 petition; therefore, the district court lacked jurisdiction to reach the merits of the *audita querela* petition ).   The Court finds that this is not a second or successive Section 2255 motion for two reasons.   First, Mr. Guerrero-Castro's ***Julio Guerrero-Castro Petition for Relief From Judgment Pursuant to N.M. Dist. Ct. P.C.P. 1-060 B(6) (Doc. 30)*** was not recharacterized by the Court as a Section 2255 motion and was, instead, dismissed under Fed. R. Civ. P. 60(b) [*Doc. 34*], so his current petition cannot be considered an attempt to file a second Section 2255 motion.   Second, there are no other remedies available for Mr. Guerrero-Castro because he is no longer "in custody" for purposes of Section 2255 relief.   *See* 28 U.S.C. §§ 2241(c) and 2255(a); *Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) (explaining that a petitioner who files a habeas petition after he has fully served his sentence and who is not subject to court supervision is not "in custody" for purposes of the court's subject matter jurisdiction), and *Klinginsmith v. Ledezma*, No. 09-6244, 373 Fed. Appx. 875, 876-77, 2010 WL 1531067 (10th Cir. April 19, 2010) (unpublished) (explaining that the federal writ of habeas corpus is only available to persons "in custody" at the time the petition is filed).   Therefore, the Court finds that this is not an attempt to file a second or successive Section 2255 motion, and the Court has jurisdiction over this petition.

## *B.  Timeliness*

Next, the Court must consider whether Mr. Guerrero-Castro's petition for a writ of error *coram nobis* is timely.   The Government argues that the petition is untimely because Mr. Guerrero-Castro should have known either at the time of sentencing or when he was in line for

deportation when he arrived at the Reeves County Detention Center in 2006, that he would be deported after serving his sentence. [*Doc. 37* at 5]. The Government, however, points to no statute or case that sets forth a deadline by which a petitioner must file a petition for writ of error *coram nobis* and, instead, cites to the one-year deadline to file a claim under Section 2255. *Id.* at 4. The Court is unaware of any deadline to file a petition for writ of error *coram nobis*, other than that a defendant must demonstrate that he exercised due diligence in raising the issue and that the information used to challenge the sentence or conviction was not previously available to him. *Klein v. United States*, 880 F.2d 250, 253-54 (10th Cir. 1989). In his affidavit, Mr. Guerrero-Castro states that he first learned that he faced automatic deportation based on his conviction when he was detained by immigration officials and sent to the immigration camp in El Paso, Texas [*Doc. 33-3* at 2], which Mr. Guerrero-Castro states in his petition happened on February 10, 2010 [*Doc. 33* at 3 and *Doc. 33-1* at 2-5]. The Court rejects the Government's contention that Mr. Guerrero-Castro's incarceration at a detention center for criminal aliens established that he was aware that he was in line for deportation so that he should have brought this claim at that time. While Mr. Guerrero-Castro may have been aware that he faced deportation at that time, the *Padilla* decision upon which Mr. Guerrero-Castro relies for his ineffective assistance of counsel claim was not decided until March 31, 2010. Therefore, there is no support that Mr. Guerrero-Castro was not diligent by bringing his claim one year later based on that decision. For these reasons, the Court finds that there is no support for the Government's argument that Mr. Guerrero-Castro was not diligent in filing his *coram nobis* petition a little more than one year after he states that he learned that he faced deportation and the *Padilla* decision was issued. The Court will, therefore, consider the merits of Mr. Guerrero-Castro's claim.

-6-

### C.  Ineffective Assistance of Counsel Claim

### 1.  Standard of Review

Mr. Guerrero-Castro asks for a writ of error *coram nobis* based on his claim that his plea was involuntary because his counsel failed to advise him of the immigration consequences he faced. [*Doc. 33* at 1].  The Tenth Circuit has established three prerequisites to grant the writ of error *coram nobis*: (1) the petition must demonstrate that the petitioner "was duly diligent in bringing his claim;" (2) "other remedies and forms of relief are unavailable or inadequate;" and (3) the "writ is available only to correct errors resulting in a complete miscarriage of justice and under circumstances compelling such action to achieve justice."   *United States v. Ballard*, No. 07-5187, 317 Fed. Appx. 719, 720-21, 2008 WL 2357748 (10thCir. June 11, 2008) (unpublished) (citation and internal quotation marks omitted).  For a writ of error *coram nobis* to issue for a party who claims ineffective assistance of counsel, the party "must show that his counsel's efforts were objectively unreasonable and that his counsel's deficiencies prejudiced him."  *Id.* at 722 (citing *Strickland v. Washington*, 455 U.S. 668, 687 (1984)).  A guilty plea is invalid if the defendant was not aware of the nature of the charges against him or the likely consequences of the plea.  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial."  *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citation omitted).

### 2.  Retroactive Application of **Padilla**

While the Government does not make an argument to the contrary, Mr. Guerrero-Castro argues in his reply that the holding of *Padilla* applies retroactively [*Doc. 40* at 2-7].  A constitutional rule is considered new and, therefore, not applicable to cases which became final before the new rule

was announced, if the rule "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (citations omitted).  In *Padilla*, the United States Supreme Court explained that its holding was based on the established first prong of the *Strickland* analysis.  130 S. Ct. at 1482.  While the Tenth Circuit has not addressed the issue of whether the *Padilla* holding applies retroactively, other courts have held that it does apply retroactively because it did not establish a new rule, but instead, it merely extended the rule in *Strickland* regarding ineffective assistance of counsel.  *See, e.g., Marroquin v. United States*, No. M-10-156, 2011 WL 488985, at *2 (S.D. Tex. Feb. 4, 2011) (unpublished) (finding that *Padilla* did not announce a new rule and, instead, extended the rule in *Strickland*), and *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *5 (E.D. Cal. July 1, 2010) (unpublished) (concluding that the holding in *Padilla* did not produce a novel result so it did not announce a new rule under *Teague* and it should be applied retroactively).  In addition, the Supreme Court in *Padilla* implied that the holding applies retroactively because the Supreme Court discussed the issue of whether its holding would open the floodgates to litigation challenging guilty pleas (130 S. Ct. at 1484-85), which would be an unnecessary discussion if the Supreme Court only intended the decision to only apply prospectively.  For these reasons, the Court finds that the holding of *Padilla* applies retroactively, and will apply it to Mr. Guerrero-Castro's claim.

### *3.  Analysis*

The United States Supreme Court held in *Padilla* that failure to advise a client that he will be deported after serving his sentence could amount to ineffective assistance of counsel. 130 S. Ct. at 1486.  The Government contends that Mr. Guerrero-Castro's counsel was not ineffective under *Padilla* for failing to advise him of the immigration consequences of his plea

because Mr. Guerrero-Castro knew of those consequences because the presentence report stated that he was a Resident Alien from Mexico, and because he was incarcerated at Reeves County Detention Center, which only houses criminal aliens.  [*Doc. 37* at 7].  The Government also states that Mr. Guerrero-Castro was aware of the immigration consequences of his plea because at a preliminary/detention hearing in his case on October 4, 2005, the Government stated that the crime "would be an aggravated felony and [Mr. Guerrero-Castro] would be deported should he be convicted and . . . he admitted to his crime." [*Doc. 38* at 1] (citing [*Doc. 38-1* at 15]).

The Court disagrees that the statement in the presentence report that Mr. Guerrero-Castro is a "Resident Alien (Mexico)",[2] satisfies the requirement of *Padilla* that counsel must advise clients of the immigration consequences of their pleas.  The Tenth Circuit has stated in an unpublished decision that, under *Padilla*, where a presentence report puts a defendant on notice that his plea deal may expose him to deportation, the defendant cannot establish prejudice based on his attorney's failure to advise him of the same.  *United States v. Gomez-Lugo*, No. 10-2104, 410 Fed. Appx. 148, 150-51, 2011 WL 310532 (10th Cir. Feb. 2, 2011) (unpublished).  However, in *Gomez-Lugo*, the presentence report stated that the defendant "is a citizen and national of Mexico with no legal authority to be in or reside [in] the United States" and, further, that "[h]e plans to live with family after he is deported as a result of the instant criminal conduct" (*Gomez-Lugo*, 410 Fed. Appx. at 151), whereas here, the presentence report merely states that Mr. Guerrero-Castro is a "Resident Alien (Mexico)."  The Court finds that the presentence report in this case is insufficient to alert Mr. Guerrero-Castro that he may be exposed to deportation by signing the plea agreement because

---

[2] The Court notes that presentence reports are not filed in the CM-ECF docket in criminal cases in this district, but the Court has reviewed the presentence report and it states that Mr. Guerrero-Castro's citizenship is "Resident Alien (Mexico)."  Presentence Report at 1.

it did not specifically state that he would be deported.  The Court also rejects the Government's contention that Mr. Guerrero-Castro's incarceration at a detention center for criminal aliens established that he was aware of the immigration consequences of his plea, because Mr. Guerrero-Castro was incarcerated there *after* he entered into the plea agreement, so this does not establish that he was aware of the consequences of his plea agreement when he entered into it. Even if his incarceration at the detention center put Mr. Guerrero-Castro on notice that he was being housed with other criminal aliens, this does not establish that he was aware he would be deported after the end of his sentence, and it certainly does not establish that his counsel made him aware of that fact before he signed the plea agreement.  The Court also finds that the Government's statement at a preliminary hearing that Mr. Guerrero-Castro would be deported if he is convicted of his crime does not satisfy *Padilla* because there is nothing in the record to indicate that Mr. Guerrero-Castro heard the Government's statement or remembered the statement at the time of his plea.  For these reasons, the Court finds that the record before it supports a finding that Mr. Guerrero-Castro's counsel failed to advise Mr. Guerrero-Castro of the legal consequences he would face if he entered into the plea agreement, and this constitutes objectively unreasonable assistance under *Padilla*.

The Court, however, finds that Mr. Guerrero-Castro fails to establish prejudice from his counsel's deficient performance because Mr. Guerrero-Castro has not established that he would have gone to trial if he had known about the deportation consequences of his plea.  While Mr. Guerrero-Castro states in the affidavit attached to his petition that he "would have insisted on going to trial, or would have asked [his] lawyer to try to negotiate a plea agreement that would not make [him] automatically subject to deportation by an immigration judge" [*Doc. 33-3* at 2],[3] the

---

[3]The Court notes that in his petition, Mr. Guerrero-Castro states that if he had been advised of the immigration consequences of his plea, "it would have been rational for him to reject the plea bargain and [either] take the case to trial or . . . attempt to secure an alternative, immigration-safe disposition plea," [*Doc. 33* at 7], but he does not state in his
(continued...)

factual circumstances surrounding his plea does not establish that he would have proceeded to trial.
*See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (stating that a defendant's mere
allegation that he would have insisted on going to trial is insufficient to show prejudice).  While
Mr. Guerrero-Castro does not have to show that he likely would have been acquitted at trial to show
prejudice from his acceptance of the plea agreement, the Court can nevertheless consider the amount
and nature of the evidence of his guilt in determining whether he has shown that there is a
reasonable probability that he would have gone to trial. *Id.* at 1073-75 ("[T]he district court properly
considered the strength of the state's case against [the defendant] as evidence of whether he would
have changed his plea.").  In this case, the evidence of Mr. Guerrero-Castro's guilt is substantial.
The presentence report states that on September 30, 2005, officers at an inspection station  issued
citations to Mr. Guerrero-Castro for failing to maintain daily log records for the previous seven days
and for having a suspended commercial driver's license.  Presentence Report at 4.  The officers then
requested that Mr. Guerrero-Castro complete a safety inspection, during which his hands noticeably
shook as he handed the paperwork to the officers.  The officers subsequently found marijuana in the
trailer he was hauling.  *Id.*  The officers read Mr. Guerrero-Castro his Miranda rights and, after
agreeing to answer questions, Mr. Guerrero-Castro admitted that he knew the marijuana was in the
trailer. *Id.* at 4-5.  Mr. Guerrero-Castro does not make any showing that this evidence would not
have been used against him at trial, nor does he deny that he committed the crime.

In addition, had Mr. Guerrero-Castro gone to trial and been convicted, in addition to being
eligible for a much higher sentence of 70-87 months,[4] instead of the 5 years he received pursuant

---

[3](...continued)
petition that he would have gone to trial if he had known of the immigration consequences of his plea.

[4]According to the Presentence Report, "[i]f the defendant were convicted at trial . . ., [and] if his guideline
calculations were completed for the entire Indictment, the defendant's offense level would have been 26 . . . [and]
(continued...)

-11-

to his plea agreement, Mr. Guerrero-Castro still would have been automatically deported because of the crime with which he was charged.  Mr. Guerrero-Castro was charged with Possession with Intent to Distribute Over 100 Kilograms of Marijuana under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), which carries a mandatory minimum 5-year term of imprisonment, and up to 40 years of imprisonment.  *See* 21 U.S.C. § 841(b)(1)(B) and Presentence Report at 1.  Under the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(iii), an alien who is convicted of an aggravated felony is deportable, and under 8 U.S.C. § 1229b(a)(3), cancellation of deportation is not available for permanent residents who have been convicted of any aggravated felony.  "Aggravated felony" is defined in the Immigration and Nationality Act to include trafficking in a controlled substance as defined in Title 21.  8 U.S.C. § 1101(a)(43)(B); *see also Perez-Hernandez v. Holder*, No. 08-9567, 332 Fed. Appx. 458, 461-62, 2009 WL 1530174 (10th Cir. June 2, 2009) (explaining that a conviction under 21 U.S.C. §841(a)(1) is for an "aggravated felony" as defined under 8 U.S.C. § 1101(a)(43)(B)).  Mr. Guerrero-Castro, therefore, would have been mandatorily deportable had he been convicted at trial, and the Court finds that, even if Mr. Guerrero-Castro were aware of the danger of deportation before he signed his plea agreement, it is highly unlikely that he would have risked a much higher sentence (70-87 months instead of 60 months), by going to trial, especially when he would have been deported at the end of that sentence anyway.  *See Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (rejecting contention that petitioner would have rejected the plea and proceeded to trial, in part, because the petitioner "never contended that he was innocent of the

---

[4](...continued)

without any downward adjustments, and the defendant's criminal history category of II, [he] would have [faced] a guideline imprisonment range [of] 70-87 months.  The defendant benefitted from the plea agreement by reducing his exposure to incarceration."  Presentence Report at 14, ¶ 64.  Mr. Guerrero-Castro received under his Plea Agreement [*Doc. 33-2* at 5-7], reductions of 3 levels for accepting responsibility and 2 levels for minor role adjustment."  Presentence Report at 14, ¶ 63.  The benefit that Mr. Guerrero-Castro received from his Plea Agreement certainly undercuts his argument that he would have gone to trial.

crimes charged, nor has he offered any potentially meritorious defense"); *Yong Wong Park v. United States*, No 05-6883-pr, 222 Fed. Appx. 82, 84, 2007 WL 1035127 (2nd Cir. March 30, 2007) (unpublished) (finding that the petitioner had not established prejudice under Strickland because, "even had [the petitioner] been aware of the immigration consequences of a plea, [he] would nonetheless have been faced with the strong likelihood of conviction at trial . . . [and h]e would also have been aware that such a conviction would trigger the same deportation consequences and would probably result in a longer sentence"); *United States v. Rivers*, Nos. 08-20006-01-KHV, 10-2343-KHV, 2011 WL 484190, at *8 (D. Kan. Feb. 7, 2011) (unpublished) (finding no prejudice in counsel's allegedly deficient performance when defendant faced a higher sentence if he proceeded to trial and had not made a showing that he could prevail at trial); and *Herrera v. Hynes*, No. CV-08-1651 (BMC)(VVP), 2008 WL 5068608, at *3 (E.D.N.Y. Nov. 21, 2008) (unpublished) (stating that, in the absence of "evidence showing why [petitioner] would have risked a trial when the likely outcome was both exposure to deportation *and* a substantial, preceding custody term . . . [petitioner] cannot raise a claim of prejudice under the second prong of *Strickland*") (citation omitted).

Likewise, while Mr. Guerrero-Castro states that, if he had known about the immigration consequences of his plea, he would have asked for a different plea that would not make him automatically deportable, he does not make any showing that a different plea agreement would have been offered to him if he had refused this one. In order for Mr. Guerrero-Castro to have avoided being mandatorily deportable, the Government would have had to offer him a plea agreement for a crime other than the one with which he was charged. Mr. Guerrero-Castro states that he would have asked his counsel to "seek an immigration[-]safe plea, such as misprision of a felony with a maximum sentence of 3 years." [*Doc. 40* at 8]. "Misprision of a felony" is a crime under 18 U.S.C.

-13-

§ 4 for a person who, "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States." Mr. Guerrero-Castro fails to show how, under the facts and circumstances of his crime, he would have qualified for a charge of misprision since he admitted that he knew he had marijuana in his truck and was, apparently, attempting to transport it surreptitiously within the United States. Mr. Guerrero-Castro also fails to provide any evidence that the Government would have made him such a plea offer, and this claim, therefore, is conclusory and should be denied. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.") (citations omitted). For these reasons, the Court finds that Mr. Guerrero-Castro fails to establish prejudice for his counsel's deficient performance and, therefore, the Court finds no error that has resulted in a complete miscarriage of justice such that a writ of error *coram nobis* should issue.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the Court recommends that Mr. Guerrero-Castro's ***Petition for Writ of Error Coram Nobis (Doc. 33)*** be **DENIED**.

**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**